960 F.2d 69
 74 Ed. Law Rep. 22
 Nathan KOESTER, by and through his next friend, Carolyn
KOESTER; Carolyn Koester; and Frank Koester, Appellants,
v.
WELLSVILLE-MIDDLETOWN R-1 SCHOOL DISTRICT; Ronald Harlan;
Michael Stolle; Walter Northcut; Ronald Blaue; Richard
Wilson; Mary Ann Burkhalter; Jimmie Angel; Harry Bishop;
Missouri State Board of Education; Rosanne Bentley; Dan L.
Blackwell; Terry A. Bond; Thomas R. Davis; Susan D.
Finke; Raymond McCallister, Jr.; Cynthia B. Thompson;
Roger L. Tolliver; Robert E. Bartman; and John F. Allan, Appellees.
 No. 91-2417.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1992.
Decided March 26, 1992.
Rehearing En Banc Denied Sept. 9, 1992.
 
 1
 Nancy E. Emmel, St. Louis, Mo., argued, for appellants.
 
 
 2
 Robert Lawrence Presson, Asst. Atty. Gen., Jefferson City, Mo., argued, for appellees.
 
 
 3
 Louis J. Leonatti and Ann P. Hagan, Mexico, Mo., on brief, for appellee Wellsville-Middletown School District.
 
 
 4
 Before FAGG and BEAM, Circuit Judges, and BATTEY,* District Judge.
 
 
 5
 BATTEY, District Judge.
 
 
 6
 This appeal arises from an action initiated in the United States District Court[1] for the Eastern District of Missouri by appellant Nathan Koester, by and through Carolyn and Frank Koester, against the Wellsville-Middletown School District and School Board (Wellsville), school officials of the Wellsville-Middletown School District, and the Missouri State Board of Education (Board of Education), all appellees in this case. The complaint alleged that the appellees denied Nathan Koester access to the free, appropriate education to which he is entitled as a handicapped child pursuant to the Education for the Handicapped Act, 20 U.S.C. § 1415 (EHA). The Koesters sought additional relief and compensation under the EHA, the Rehabilitation Act, 29 U.S.C. § 794, and 42 U.S.C. § 1983. Appellants' claims under 42 U.S.C. § 1983 were withdrawn prior to trial.
 
 
 7
 A detailed recitation of the facts is not necessary for the disposition of this case. Carolyn and Frank Koester are the parents and guardians of their 23-year-old son Nathan Koester, an individual with a lengthy and unfortunate history of personality disorders and mental impairment. The Koesters were at odds with appellees for many years over the education made available for their son, the essence of that dispute centering upon the Koesters' demand that a residential education program be provided to Nathan at the cost of the appellees, and the appellees' position that residential placement was not necessary for Nathan to receive an appropriate education. Nathan's educational progress has been impaired not just by his intellectual impairment, but also by his personality disorder which caused him to engage in socially unacceptable behavior.
 
 
 8
 Nathan has been evaluated as being educably mentally retarded or mildly mentally retarded. His IQ has been measured at 75, an average IQ being around 100. Nathan's socially aberrant behavior notwithstanding, he has been educated to between a fifth and ninth grade level, depending upon the subject. He performs best in reading and spelling but has some difficulty in math, although he can perform fundamental mathematical functions such as addition, subtraction, and multiplication. Nathan achieved this level of education through various special education programs over the course of his schooling, as well as through a great deal of personal attention from his parents.
 
 
 9
 A bench trial was conducted beginning on October 13, 1988. At the request of the trial court, the Missouri Department of Mental Health (DMH), an agency that had previously been involved in Nathan's case but was not a party to the litigation, prepared a proposal respecting Nathan's placement. This proposal, introduced at trial as State Board Exhibit B (Exhibit B), addressed certain of Nathan's needs for psychiatric treatment. On the third day of trial and early on the morning of the fourth day, officials from the DMH and Wellsville met with the Koester's expert trial witness and prepared a plan respecting Nathan's placement that was introduced as State Board Exhibit C (Exhibit C). Exhibit C provided that the DMH would pay for Nathan's residential placement with assistance from the Department of Education and Special School District in the form of direct funding and special grants.
 
 
 10
 The parties agreed to implement the plans proposed in Exhibit B and Exhibit C. Further litigation was discontinued, although the trial court retained continuing jurisdiction over the action to monitor the proposed program. In a memorandum opinion issued June 19, 1989, the trial court noted that implementation of the Exhibit C program would proceed in lieu of further litigation. The court specifically ruled against the appellants' legal claims under the EHA and Rehabilitation Act. The trial court continued to monitor the Exhibit C program and on June 11, 1990, the court ordered that the Exhibit C program would continue under certain reporting and funding requirements. Finally on March 27, 1991, the trial court relieved appellees of the duty to provide further education services to Nathan Koester by reason of the fact that Nathan had reached age 21. The trial court affirmed its earlier ruling denying the Koesters' claims under the EHA and Rehabilitation Act.
 
 DISCUSSION
 
 11
 On appeal appellants essentially claim that the trial court committed error in ruling on the Koesters' claim for declaratory and injunctive relief because the stipulation of the parties to implement Exhibit C divested the court of jurisdiction of the legal issues in the case. They further raise a case and controversy issue. We have reviewed these claims and find them of no merit. In its specific application, the case or controversy requirement has not been interpreted to divest a court of every issue presented to it where one of the issues is rendered moot; a court continues to have jurisdiction over those controversies which remain alive. Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).
 
 
 12
 Appellants' cases and controversy argument would require this Court to determine that the trial court's June 19, 1989, memorandum opinion and subsequent orders are rulings adverse to the appellees. This argument is simply not supported by the trial court's findings of fact and conclusions of law. The trial court specifically stated that the stipulation of the parties to discontinue litigation and implement Exhibit C was not a "concession by either the Department of Mental Health of the Department of Elementary and Secondary Education that [Exhibit C] was educationally related or that they were legally obligated to provide it." Because the stipulation did not represent anything more that the trial court's determination that Exhibit C was both agreeable and mutually beneficial to the parties, the trial court did not commit error by proceeding to rule on the legal issues presented by appellants' claims where resolution of those claims was necessary to resolve issues not addressed in the stipulation.
 
 
 13
 Among the issues not addressed in the stipulation was appellants' claim for monetary reimbursement and compensatory damages. In order to be entitled to this relief appellants would have had to prevail on their claims under the EHA and Rehabilitation Act. Thus, the legal merits of those claims necessarily had to be addressed in order to resolve appellants' claims for monetary relief. We find no error in the trial court's decision to rule on the merits of appellants' EHA and Rehabilitation Act claims, nor can we say that the trial court's conclusion that appellants are not prevailing parties is clearly erroneous. The record supports the conclusion that there was no violation of the EHA or the Rehabilitation Act. The fact that appellees provided funding past Nathan's 21st birthday is not an indication that appellants' obtained the compensatory relief sought in the complaint. The record indicates that continuation of educational services to Nathan for a semester past his 21st birthday was merely intended to provide Nathan with a full school year and was not intended to represent any sort of compensation for past misconduct on the part of the appellees.
 
 
 14
 This Court is also unpersuaded that Exhibit C represents a settlement of appellants' claims which would entitle appellants' to some form of relief. Exhibit C was entirely prospective, it did not purport to address appellants' claims regarding alleged past violations. As such, Exhibit C is not a settlement which would make appellants a prevailing party in this case, but it was simply an agreement by the parties to interrupt litigation in order to implement a course of treatment. Appellants' attempt to elevate Exhibit C beyond its intent in order to cast themselves as prevailing parties for the purpose of recovering attorneys' fees and expenses is not supported by the record.
 
 
 15
 The record reflects that the trial court devoted considerable concern and attention to this case. The court retained jurisdiction of the case for more than two years after the parties entered into the stipulation so that the court could monitor the implementation of Exhibit C. The legal issues of appellants' complaint were ripe for determination by the trial court. The court properly retained jurisdiction over all issues not resolved through the stipulation of the parties and ruled on those controversies in order to bring the litigation to conclusion. Accordingly, we affirm the ruling of the district court.
 
 
 
 *
 The Honorable Richard H. Battey, United States District Judge for the District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable George F. Gunn, Jr., United States District Judge for the Eastern District of Missouri